## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DOMINICK LEROY DAVIS,

         Plaintiff,

vs.

RENTGROW, INC.,

         Defendants.

Case No.: 3:23-cv-1503

**JURY TRIAL DEMANDED**

## COMPLAINT

Dominick Leroy Davis ("Plaintiff" or "Mr. Davis") by and through his counsel brings the following Complaint against RentGrow, Inc. ("Defendant" or "RentGrow") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report created by Defendant, then published to Plaintiff's potential landlord, which inaccurately reported Plaintiff's past criminal record.

## INTRODUCTION

1.    This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis.  It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.     Defendant assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included numerous inaccurate duplications of misdemeanor and felony charges.

4.     Plaintiff's housing application was denied by prospective landlords after receiving the inaccurate tenant screening report created by Defendant.

5.     Defendant's inaccurate report contained numerous false and duplicative entries of misdemeanor and felony charges that did not exist in the court records from Duval County, Florida.

6.     Had Defendant performed even the most cursory review of the underlying public court records, it would have discovered that Plaintiff's past criminal record did not hold as many charges as Defendant reported.

7.     Defendant does not employ reasonable procedures to assure maximum possible accuracy of the information it reports regarding consumers. Defendant's

failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

8.    Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

9.    Defendant's inaccurate report cost Plaintiff the ability to rent the apartment units that were suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

10.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12.     Dominick Leroy Davis ("Plaintiff" or "Mr. Davis") is a natural person residing in Jacksonville, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13.     Defendant RentGrow, Inc. ("Defendant" or "RentGrow") is a "consumer reporting agency," and a "reseller," as those terms are defined under 15 U.S.C. § 1681a(f), a(u). RentGrow assembles and merges information contained in the database of another consumer reporting agency and maintains a database of the assembled or merged information from which new consumer reports are produced. RentGrow is registered to do business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 307 Waverly Oaks Road, Suite 301, Waltham, MA 02452, and can be served with process by way of its registered agent, Corporation Service Company, located at 84 State Street, Boston, MA 02109.

14.     Defendant, as part of its regular business, sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant.  These reports are provided in connection with a business transaction initiated by the consumer.

15.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

18.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.   Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

19.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

20.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

21.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

22.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

23.    The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

24.     In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

25.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

26.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

27.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

### DEFENDANT'S ILLEGAL BUSINESS PRACTICES

28.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data.  As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

29.     Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are

created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

30.     Tenant Screening companies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

31.     Given that Defendant is in the business of selling tenant screening reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

32.     Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

33.     Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving

the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

34.    Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

35.    Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony.

36.    As a provider of tenant screening reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for an Apartment with Gregory Cove Apartments

37.    Plaintiff had been living by himself in his home in Florida under a Section 8 voucher.

38.    Plaintiff was notified that his home had been sold and was given until November 1, 2023 to find a new home.

39.    Plaintiff's time to find a new home was extended to December 1, 2023.

40.    Plaintiff began searching, from September to November 2023, for a new place in Florida. Specifically, Plaintiff was searching for an apartment that was in a safe neighborhood, quiet, laid back, and clean, and within his budget.

41.    On or about November 1, 2023, Plaintiff applied online and paid a reservation and application fee of $185 to Gregory Cove Apartments ("Gregory Cove").

### Defendant Published an Inaccurate Tenant Screening Report to Gregory Cove Apartments

42.    Gregory Cove contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

43.    On or around early November 2023, Gregory Cove ordered a tenant screening report on Plaintiff from Defendant.

44.    On or around early November 2023, Defendant sold a tenant screening report about Plaintiff to Gregory Cove, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

45.    The tenant screening report, identified as a Property Screening Result by Defendant, is a consumer report regulated by the FCRA.

46.    Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

47.    Upon information and belief, Defendant's tenant screening report about Plaintiff included a grossly inaccurate and stigmatizing duplications of Plaintiff's

past misdemeanor and felony charges from Duval County, Florida, which appeared in the tenant screening report as follows:

| DAVIS, DOMINICK LEROY | RECORD 1 OF 6 | |
|---|---|---|
| **Last Name:** DAVIS | | |
| **First Name:** DOMINICK | | |
| **Middle Name:** LEROY | | |
| **DOB:** 04/08/1973 | | |
| **Address Information** | | |
| 1624 W 31ST ST , JACKSONVILLE FL 32206 | | |
| **Record Type:** Criminal | | |
| **State Of Record:** FL | | |
| **Database:** FL ALACHUA COUNTY COURT | | |
| GRAND THEFT | | RECORD 1 - CHARGE 1 |
| **State Of Record:** FL | | |
| **Court:** FL ALACHUA COUNTY COURT | **Case #:** 011991CF003566A | |
| **Offense:** GRAND THEFT | | |
| **Statute:** 812.014(2)(C) | | |
| **Disposition:** ADJUDICATED GUILTY/DELINQUENT IN JUVENILE COURT | | |
| **Disposition Date:** 03/22/1993 | | |
| **Category:** CRIMINAL | | |
| **Court Name:** FL ALACHUA COUNTY COURT | | |
| **Court Type:** CRIMINAL | | |
| **Fips AreaShortName:** Alachua | | |
| **Fips Code:** 12001 | | |
| **Fips Display:** FL-Alachua (12001) | | |
| **Fips StateCode:** FL | | |
| **Category:** CRIMINAL | | |
| **Counts:** 1 | | |
| **Last Updated:** 07/13/2023 | | |

11

**DAVIS, DOMINICK L**        RECORD 2 OF 6

**Last Name:** DAVIS        **Sex:** MALE
**First Name:** DOMINICK        **Race:** BLACK
**Middle Name:** L        **Eyes:** BROWN
**DOB:** 04/08/1973

**Record Type:** Criminal
**State Of Record:** FL
**Database:** FL DEPARTMENT OF CORRECTIONS

**GRAND THEFT, 300 LESS 20,000**        RECORD 2 - CHARGE 1

**State Of Record:** FL
**Jurisdiction:** ALACHUA        **Case #:** 9103566
**Offense:** GRAND THEFT, 300 LESS 20,000
**Offense Degree:** Felony
**Offense Date:** 05/15/1991
**Disposition:** DOC Supervision
**Disposition Date:** 04/19/1994
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Alachua
**Fips Code:** 12001
**Fips Display:** FL-Alachua (12001)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** ALACHUA
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 06/22/1993
**Comment:** Offense Status: INACTIVE OFFENDER

**GRAND THEFT, 300 LESS 20,000**        RECORD 2 - CHARGE 2

**State Of Record:** FL
**Jurisdiction:** ALACHUA        **Case #:** 9103566
**Offense:** GRAND THEFT, 300 LESS 20,000
**Offense Degree:** Felony
**Offense Date:** 05/15/1991
**Disposition:** DOC Supervision
**Disposition Date:** 04/19/1994
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Alachua
**Fips Code:** 12001
**Fips Display:** FL-Alachua (12001)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** ALACHUA
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 10/21/1991
**Comment:** Offense Status: INACTIVE OFFENDER

**GRAND THEFT, 300 LESS 20,000**        RECORD 2 - CHARGE 3

**State Of Record:** FL
**Jurisdiction:** ALACHUA        **Case #:** 9103566
**Offense:** GRAND THEFT, 300 LESS 20,000
**Offense Degree:** Felony
**Offense Date:** 05/15/1991
**Disposition:** DOC Supervision
**Disposition Date:** 04/19/1994
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Alachua
**Fips Code:** 12001
**Fips Display:** FL-Alachua (12001)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** ALACHUA
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 08/30/1996
**Comment:** Offense Status: INACTIVE OFFENDER

**GRAND THEFT, 300 LESS 20,000**        RECORD 2 - CHARGE 4

**State Of Record:** FL
**Jurisdiction:** ALACHUA        **Case #:** 9103566
**Offense:** GRAND THEFT, 300 LESS 20,000
**Offense Degree:** Felony
**Offense Date:** 05/15/1991
**Disposition:** DOC Supervision
**Disposition Date:** 04/19/1994
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Alachua
**Fips Code:** 12001
**Fips Display:** FL-Alachua (12001)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** ALACHUA
**Commitment Facility:** ALACHUA
**Supervision County:** ALACHUA
**Supervision StartDate:** 04/20/1994
**Comment:** Offense Status: INACTIVE OFFENDER

**DAVIS, DOMINICK L**        **RECORD 5 OF 6**

**Last Name:** DAVIS        **Sex:** MALE
**First Name:** DOMINICK        **Race:** BLACK
**Middle Name:** L        **Eyes:** BROWN
**DOB:** 04/08/1973
**Record Type:** Criminal
**State Of Record:** FL
**Database:** FL DEPARTMENT OF CORRECTIONS

**AGG ASSLT-W/WPN NO INTENT TO K**        **RECORD 3 - CHARGE 1**

**State Of Record:** FL
**Jurisdiction:** DUVAL        **Case #:** 9606168
**Offense:** AGG ASSLT-W/WPN NO INTENT TO K
**Offense Degree:** FELONY THIRD DEGREE
**Offense Date:** 05/13/1996
**Statute:** 784.021(1)(A)
**Disposition:** DOC Supervision
**Disposition Date:** 08/30/1996
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Type Classification:** F
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 08/30/1996
**Comment:** Offense Status: INACTIVE OFFENDER

**AGG ASSLT-W/WPN NO INTENT TO K**        **RECORD 3 - CHARGE 2**

**State Of Record:** FL
**Jurisdiction:** DUVAL        **Case #:** 9606168
**Offense:** AGG ASSLT-W/WPN NO INTENT TO K
**Offense Degree:** FELONY THIRD DEGREE
**Offense Date:** 05/13/1996
**Statute:** 784.021(1)(A)
**Disposition:** DOC Supervision
**Disposition Date:** 08/30/1996
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Duval
**Fips Code:** 12031
**Fips Display:** FL-Duval (12031)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Type Classification:** F
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 06/22/1993
**Comment:** Offense Status: INACTIVE OFFENDER

**AGG ASSLT-W/WPN NO INTENT TO K**        **RECORD 3 - CHARGE 3**

**State Of Record:** FL
**Jurisdiction:** DUVAL        **Case #:** 9606168
**Offense:** AGG ASSLT-W/WPN NO INTENT TO K
**Offense Degree:** FELONY THIRD DEGREE
**Offense Date:** 05/13/1996
**Statute:** 784.021(1)(A)
**Disposition:** DOC Supervision
**Disposition Date:** 08/30/1996
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Duval
**Fips Code:** 12031
**Fips Display:** FL-Duval (12031)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Type Classification:** F
**Commitment Facility:** ALACHUA
**Supervision County:** ALACHUA
**Supervision StartDate:** 04/20/1994
**Comment:** Offense Status: INACTIVE OFFENDER

**AGG ASSLT-W/WPN NO INTENT TO K**        **RECORD 3 - CHARGE 4**

**State Of Record:** FL
**Jurisdiction:** DUVAL        **Case #:** 9606168
**Offense:** AGG ASSLT-W/WPN NO INTENT TO K
**Offense Degree:** FELONY THIRD DEGREE
**Offense Date:** 05/13/1996
**Statute:** 784.021(1)(A)
**Disposition:** DOC Supervision
**Disposition Date:** 08/30/1996
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Duval
**Fips Code:** 12031
**Fips Display:** FL-Duval (12031)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Type Classification:** F
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 10/21/1991
**Comment:** Offense Status: INACTIVE OFFENDER

**DAVIS, DOMINICK L**  RECORD 4 OF 6

**Last Name:** DAVIS  **Sex:** MALE
**First Name:** DOMINICK  **Race:** BLACK
**Middle Name:** L  **Eyes:** BROWN
**DOB:** 04/08/1973
**Record Type:** Criminal
**State Of Record:** FL
**Database:** FL DEPARTMENT OF CORRECTIONS

**FORGERY/UTTERING**  RECORD 4 – CHARGE 1
**State Of Record:** FL
**Jurisdiction:** DUVAL  **Case #:** 9609328
**Offense:** FORGERY/UTTERING
**Offense Degree:** FELONY THIRD DEGREE
**Offense Date:** 08/16/1996
**Statute:** 831
**Disposition:** DOC Supervision
**Disposition Date:** 08/30/1996
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Duval
**Fips Code:** 12031
**Fips Display:** FL-Duval (12031)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Type Classification:** F
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 10/21/1991
**Comment:** Offense Status: INACTIVE OFFENDER

**FORGERY/UTTERING**  RECORD 4 – CHARGE 2
**State Of Record:** FL
**Jurisdiction:** DUVAL  **Case #:** 9609328
**Offense:** FORGERY/UTTERING
**Offense Degree:** FELONY THIRD DEGREE
**Offense Date:** 08/16/1996
**Statute:** 831
**Disposition:** DOC Supervision
**Disposition Date:** 08/30/1996
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Duval
**Fips Code:** 12031
**Fips Display:** FL-Duval (12031)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Type Classification:** F
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 06/22/1993
**Comment:** Offense Status: INACTIVE OFFENDER

**FORGERY/UTTERING**  RECORD 4 – CHARGE 3
**State Of Record:** FL
**Jurisdiction:** DUVAL  **Case #:** 9609328
**Offense:** FORGERY/UTTERING
**Offense Degree:** FELONY THIRD DEGREE
**Offense Date:** 08/16/1996
**Statute:** 831
**Disposition:** DOC Supervision
**Disposition Date:** 08/30/1996
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Duval
**Fips Code:** 12031
**Fips Display:** FL-Duval (12031)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Type Classification:** F
**Commitment Facility:** DUVAL
**Supervision County:** DUVAL
**Supervision StartDate:** 08/30/1996
**Comment:** Offense Status: INACTIVE OFFENDER

**FORGERY/UTTERING**  RECORD 4 – CHARGE 4
**State Of Record:** FL
**Jurisdiction:** DUVAL  **Case #:** 9609328
**Offense:** FORGERY/UTTERING
**Offense Degree:** FELONY THIRD DEGREE
**Offense Date:** 08/16/1996
**Statute:** 831
**Disposition:** DOC Supervision
**Disposition Date:** 08/30/1996
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Type:** CRIMINAL
**Fips AreaShortName:** Duval
**Fips Code:** 12031
**Fips Display:** FL-Duval (12031)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Type Classification:** F
**Commitment Facility:** ALACHUA
**Supervision County:** ALACHUA
**Supervision StartDate:** 04/20/1994
**Comment:** Offense Status: INACTIVE OFFENDER

**DAVIS, DOMINICK LEROY**                                    RECORD 5 OF 6

**Last Name:** DAVIS
**First Name:** DOMINICK
**Middle Name:** LEROY
**DOB:** 04/08/1973
**Address Information**
1624 W 31ST ST JACKSONVILLE FL 32206 ,
1624 W 31ST ST , JACKSONVILLE FL 32206
**Record Type:** Criminal
**State Of Record:** FL
**Database:** FL ALACHUA COUNTY CLERK OF COURTS

**GRAND THEFT**                                              RECORD 5 – CHARGE 1
**File Date:** 10/15/1991
**State Of Record:** FL
**Jurisdiction:** ALACHUA                    **Case #:** 011991CF003566A
**Court:** CIRCUIT
**Offense:** GRAND THEFT
**Offense Degree:** FELONY THIRD DEGREE
**Statute:** 812.014(2)(C)
**Disposition:** ADJUDICATED GUILTY/DELINQUENT IN JUVENILE COURT
**Disposition Date:** 09/20/1994
**Arrest Date:** 05/15/1991
**Case Type:** FELONY
**Category:** CRIMINAL
**Court Name:** CIRCUIT
**Court Type:** CRIMINAL
**Fips AreaShortName:** Alachua
**Fips Code:** 12001
**Fips Display:** FL-Alachua (12001)
**Fips StateCode:** FL
**Category:** CRIMINAL
**Counts:** 1
**County Or Jurisdiction:** ALACHUA
**Type Classification:** F
**Comment:** SENTENCING PROVISIONS: NIGHT CONFINEMENT
**Comment:** DAYS CREDITED FOR JAIL TIME SERVED: 87

| DAVIS, DOMINICK LEROY | | RECORD 6 OF 6 |
|---|---|---|

**Last Name:** DAVIS     **Sex:** MALE
**First Name:** DOMINICK     **Race:** B
**Middle Name:** LEROY
**DOB:** 04/08/1973
**Address Information**
1624 31ST STREET WEST , JACKSONVILLE FL 32209
1063 AIRPORT RD #206 , JACKSONVILLE FL 32218
**Record Type:** Criminal
**State Of Record:** FL
**Database:** FL DUVAL CLERK OF CIRCUIT COURT

| CRIMINAL MISCHIEF (> 200 – < 1000) | | RECORD 6 - CHARGE 1 |
|---|---|---|

**File Date:** 12/12/2021
**State Of Record:** FL     **Case #:** 16-2022-MM-006951-AXXX-MA
**Jurisdiction:** DUVAL
**Offense:** CRIMINAL MISCHIEF (> 200 – < 1000)
**Offense Degree:** M1
**Disposition:** ADJUDICATED GUILTY
**Disposition Date:** 07/28/2022
**Arrest Date:** 12/11/2021
**Arrest Agency:** JSO
**Category:** MISDEMEANOR
**Court Type:** MISDEMEANOR
**Fips AreaShortName:** Duval
**Fips Code:** 12031
**Fips Display:** FL-Duval (12031)
**Fips StateCode:** FL
**Arresting Agency:** JSO
**Category:** MISDEMEANOR
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Last Updated:** 09/27/2021
**Comment:** CASE STATUS: DISPOSED; CONFINEMENT: COUNTY JAIL; CREDIT TIME: 2 DAYS; DL#: FL D120172731280; OFFENDER#: 2021-026242

| CRIMINAL MISCHIEF (> 200 – < 1000) | | RECORD 6 - CHARGE 2 |
|---|---|---|

**File Date:** 12/12/2021
**State Of Record:** FL     **Case #:** 16-2022-MM-006951-AXXX-MA
**Jurisdiction:** DUVAL
**Offense:** CRIMINAL MISCHIEF (> 200 – < 1000)
**Offense Degree:** M1
**Statute:** S806.13(1)(B)2
**Disposition:** ADJUDICATED GUILTY
**Disposition Date:** 07/28/2022
**Arrest Date:** 12/11/2021
**Arrest Agency:** JSO
**Category:** MISDEMEANOR
**Counts:** 1
**County Or Jurisdiction:** DUVAL
**Last Updated:** 05/31/2023
**Comment:** CASE STATUS: DISPOSED; CONFINEMENT: COUNTY JAIL; CREDIT TIME: 2 DAYS; DL#: FL D120172731280; OFFENDER#: 2021-026242

48.     The numerous reports of felony and misdemeanor charges reported by

Defendant about Plaintiff are inaccurate, specifically:

(a)     Record 1 and Record 5 both report identical charges of Case No.

01 1991 CF 003566 A (Felony Grand Theft), making it look like

two separate charges and convictions. It should have only been reported once.

(b)     Record 2 reports four identical charges of Case No. 9103566 (Felony Grand Theft, 300 less 20,000), making it look like four separate charges when Plaintiff was only charged with one count.

(c)     Record 3 reports four identical charges of Case No. 9606148 (Felony Aggravated Assault with a Weapon with No Intent to Kill), making it look like four separate charges when Plaintiff was only charged with a single charge of Felony Assault with a Firearm (Domestic) with Case No. 16-1996-CF-006148-AXXX-MA

(d)     Record 4 reports four identical charges of Case No. 96009328 (Forgery/Uttering), making it look like four separate charges when Plaintiff was only charged with each once.

(e)     Record 6 reports two identical charges of Case No. 16-2022-MM-006951-AXXX-MA (Misdemeanor Criminal Mischief) when Plaintiff was only charged of a single charge of Misdemeanor Criminal Mischief.

49.     A cursory review of the widely available underlying public court records confirms correct number of charges and convictions for Plaintiff.

50.     The sole reason the inaccurate duplication of criminal records was reported was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

51.     Had Defendant followed reasonable procedures, it would have discovered that correct number of charges and convictions of Plaintiff criminal history and that it should have reported the same.

52.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Gregory Cove Denies Plaintiff's Housing Application**

53.     On or about November 3, 2023, Plaintiff was notified by Gregory Cove that his housing application was denied as a direct result of the information included in report by Defendant.

54.    Plaintiff was never provided a copy of the report conducted by Defendant, but was told that it was Defendant's report that determined Gregory Cove's decision.

55.    Gregory Cove only returned $100 of Plaintiff's $185 reservation and application fee.

56.    Plaintiff was upset, but immediately worked to find new housing opportunities despite the one he lost due to Defendant's inaccurate reporting.

57.    Specifically, Defendant reported numerous duplications of Plaintiff's past criminal history.  The underlying public court record information was widely available to Defendant prior to publishing Plaintiff's tenant screening report to Gregory Cove, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Applies for an Apartment with Lindsey Terrace Apartments**

58.    Still needing to secure housing for himself, Plaintiff immediately set out to find more housing opportunities.

59.    On or around November 3, 2023, Plaintiff found new housing that was in a good neighborhood, affordable, quiet, and close to both a mall and movie theatre.

60.     On or about November 3, 2023, Plaintiff applied online and paid a reservation and application fee of $185 to Lindsey Terrace Apartments ("Lindsey Terrace").

### Defendant Published an Inaccurate Tenant Screening Report to Lindsey Terrace Apartments

61.     Lindsey Terrace contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

62.     On or about November 3 2023, Lindsey Terrace ordered a tenant screening report on Plaintiff from Defendant.

63.     On or about November 3, 2023, Defendant sold a tenant screening report about Plaintiff to Lindsey Terrace, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

64.     The tenant screening report, identified as a Property Screening Result by Defendant, is a consumer report regulated by the FCRA.

65.     Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

66.     Specifically, Defendant's tenant screening report about Plaintiff included a grossly inaccurate and stigmatizing duplications of Plaintiff's past

misdemeanor and felony charges from Duval County, Florida, including the same inaccurate reporting as Defendant's prior report to Gregory Cove.

67.   A cursory review of the widely available underlying public court records confirms correct number of charges and convictions for Plaintiff.

68.   The sole reason the inaccurate duplication of criminal records was reported was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

69.   Had Defendant followed reasonable procedures, it would have discovered that correct number of charges and convictions of Plaintiff criminal history and that it should have reported the same.

70.   In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Lindsey Terrace Denies Plaintiff's Housing Application**

71.   On or about November 3, 2023, Plaintiff was notified by Lindsey Terrace that his housing application was denied as a direct result of information included in the tenant screening report by Defendant.

72.     Lindsey Terrace only returned $100 of Plaintiff's $185 reservation and application fee.

73.     Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing the sheer number of duplicated criminal records contained within the tenant screening report.

74.     Plaintiff was very panicked, confused, humiliated, and concerned about the impact of the inaccurate reporting, both in relation to the Gregory Cove and Lindsey Terrace apartments, but also the impact of the same on his future.

75.     Plaintiff was hoping to be able to live at Lindsey Terrace, and felt humiliated that they believed his criminal history was much worse than it was.

76.     However, Plaintiff was running out of time before he had to leave his home and so had no choice but to immediately begin searching for new housing despite Defendant's inaccurate reporting.

77.     Specifically, Defendant reported numerous duplications of Plaintiff's past criminal history.  The underlying public court record information was widely available to Defendant prior to publishing Plaintiff's tenant screening report to Lindsey Terrace, but Defendant failed to perform even a cursory review of such information.

**Plaintiff Applies for an Apartment with Pine Meadows Apartments**

78.   Desperate to secure housing for himself, Plaintiff immediately set out to find more housing opportunities.

79.   On or around November 3, 2023, Plaintiff found new housing opportunity, and after an in-person visit, fell in love with the apartment as it was in a good neighborhood, safe, affordable, quiet, peaceful, and had amenities in placed for the elderly and disabled.

80.   As Plaintiff is disabled himself, he desperately wanted to ensure he would get the apartment, and hoped that they would use a different tenant screening report then the one prepared by Defendant.

81.   On or about November 8, 2023, Plaintiff applied online and paid a reservation and application fee of $185 to Pine Meadows Apartments ("Pine Meadows").

**Defendant Published an Inaccurate Tenant Screening Report to Pine Meadows Apartments**

82.   Pine Meadows contracted with Defendant to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

83.   On or about November 8, 2023, Pine Meadows ordered a tenant screening report on Plaintiff from Defendant.

84.    On or about November 8, 2023, Defendant sold a tenant screening report about Plaintiff to Pine Meadows, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

85.    The tenant screening report, identified as a Property Screening Result by Defendant, is a consumer report regulated by the FCRA.

86.    Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

87.    Specifically, Defendant's tenant screening report about Plaintiff included a grossly inaccurate and stigmatizing duplications of Plaintiff's past misdemeanor and felony charges from Duval County, Florida, including the same inaccurate reporting as Defendant's prior reports to Gregory Cove and Lindsey Terrace.

88.    A cursory review of the widely available underlying public court records confirms correct number of charges and convictions for Plaintiff.

89.    The sole reason the inaccurate duplication of criminal records was reported was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

90.    Had Defendant followed reasonable procedures, it would have discovered that correct number of charges and convictions of Plaintiff criminal history and that it should have reported the same.

91.    In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Pine Meadows Denies Plaintiff's Housing Application

92.    On or about November 8, 2023, Plaintiff was notified by Pine Meadows that his housing application was denied as a direct result of information included in the tenant screening report by Defendant.

93.    Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing the sheer number of duplicated criminal records contained within the tenant screening report.

94.    Plaintiff, desperate to not lose out on another housing opportunity, reached out to Pine Meadows on or around November 8, 2023, and explained to them that the criminal records were very old and were being duplicated.

95.    A representative of Pine Meadows explained to Plaintiff that they would be glad to have him as a tenant if he could have the inaccurate reporting

corrected, and explained that they would leave his application open for another 30 days.

96.    The Pine Meadows representative also explained it may take up to two to three weeks before Plaintiff is refunded $100 from his $185 reservation and application fee.

97.    Plaintiff has remained very panicked, confused, and concerned about the impact of the inaccurate reporting, worrying that he may lose out on yet another perfect housing opportunity and be left homeless due to Defendant's inaccurate reporting.

98.    Specifically, Defendant reported numerous duplications of Plaintiff's past criminal history.  The underlying public court record information was widely available to Defendant prior to publishing Plaintiff's tenant screening report to Pine Meadows, but Defendant failed to perform even a cursory review of such information.

99.    Plaintiff continues to follow up with Pine Meadows Apartments in hopes that the application for housing will be approved, however, until Defendant corrects its inaccurate reporting about Plaintiff, he cannot move forward.

100.  Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Pine Meadows Apartments formed a negative opinion about Plaintiff.

101.  Defendant's false report cost Plaintiff housing opportunities that met his needs, including those of affordability, safety, peace, quiet, and amenities for his disability.

102.  Plaintiff was looking forward to living at Pine Meadows Apartments because it was in a safe neighborhood, provided amenities for his disability, was peaceful and quiet, and was within his budget.

103.  Due to Defendant's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek housing, Plaintiff fears he will can end up homeless by the time December 1, 2023 comes around.

104.  The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

105.  As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage;

loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

106.   Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

107.   Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

108.   At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

109.   At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

110.   Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report it sold about Plaintiff as well as the information it published within the same.

111.   As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing

opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

112.   Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.   Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

113.   Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendant negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 26th day of December 2023

**CONSUMER ATTORNEYS**
/*s/ Catherine Tillman*
Catherine Tillman, Esq., (FL Bar No. 0057663)
8245 N. 85th Way
Scottsdale, AZ 85258
T : (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorney for Plaintiff*
*Dominick Leroy Davis*